1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8  YVONNE COTTA, individually and as          CASE NO. 1:13-cv-00359-LJO-SMS
   representative of the Estate of John Cotta;
9  MADISON COTTA, a minor, represented by
   her mother and legal representative and     ORDER DENYING DEFENDANTS'
10 guardian, Natalie Pohl,                      MOTION TO DISMISS, IN PART, AND
                                                GRANTING DEFENDANTS' MOTION
11                      Plaintiff,              TO DISMISS, IN PART, WITH
                                                LEAVE TO AMEND
12        v.

13 COUNTY OF KINGS, et al.,

14                      Defendants.    (Doc. 9)
   _____/
15

16        Presenting numerous procedural and substantive reasons why Plaintiffs' complaint should

17 not go forward, Defendants move to dismiss the complaint for failure to state a claim.  F.R.Civ.P.

18 12(b)(6).  After briefing by all parties, the Court took this matter under submission on May 2,

19 2013.  Following careful review and consideration of the complaint in this matter and each

20 parties' written briefs, as well as applicable law, the Court denies Defendants' motion to dismiss,

21 in part, and grants Defendants' motion to dismiss, in part.  Plaintiff is granted 45 days in which

22 to amend those portions of the complaint dismissed without prejudice by this order.

23 **I.    Factual Allegations**

24        According to the complaint, on June 29, 2010, Plaintiffs' decedent, John Cotta,[1] was a

25 passenger in a car driven by Heath Parnell, a wanted parolee.  After being spotted by police,

26 Parnell led officers on a high speed chase through Kings County, which ended when police shot

27 ///

28 _____

        [1] In this order, all references to "Cotta" will be to John Cotta.

                                              1

1  and wounded Parnell.  Cotta surrendered and subsequently made at least two statements to

2  investigators that inculpated Parnell.

3      Pending trial, Parnell and Cotta were confined in the Kings County jail.  Because of the

4  serious charges against him, Cotta was initially recommended for administrative

5  segregation/protective custody.  But since he had no history of violence or gang connections, on

6  July 6, 2010, Defendant Sgt. S. Henderson ordered Cotta's placement in the jail's general

7  population.

8      In February 2011, following pressure and intimidation from Parnell, Cotta asked to be

9  celled with Parnell.  Plaintiffs allege that Parnell wanted to minimize the likelihood of Cotta's

10  cooperating with authorities or testifying against Parnell.  Henderson approved the request but

11  expressed skepticism.  Parnell, who had a history of violent crime and a known association with

12  Hell's Angels, had been cited for ten jail offenses; Cotta had been cited for five.

13      On January 16, 2012, Henderson approved continued housing of Cotta and Parnell in the

14  same cell despite multiple jail offenses.  Although Henderson warned Cotta and Parnell that

15  further infractions would result in their being separated, they remained in the same cell until

16  Cotta's death.

17      As Cotta and Parnell's joint trial approached, tensions between them increased.  Panic

18  buttons were tripped in their cell pod approximately thirty times.  Reports indicated that Parnell's

19  behavior was increasingly erratic through trial and while awaiting sentencing.  Nonetheless, the

20  co-defendants' custody status was never investigated or assessed.

21      In March 2012, Cotta and Parnell were tried jointly with separate juries.  Ninety percent

22  of the evidence was admitted against both defendants.  Although Cotta did not testify against

23  Parnell, his defense, that Parnell was the primary actor and Cotta an unwilling participant, was

24  adverse to Parnell's defense.

25      The juries convicted both co-defendants.  Scheduled to be sentenced on April 24, 2012,

26  Parnell faced 180 years to life plus ten years.  On April 23, 2012, despite frequent rounds and

27  audio monitoring,  jail guards found Cotta dead in the cell he shared with Parnell, amidst

28  evidence of trauma and violence.

1    **II.    Procedural History**

2         On July 30, 2012, the Estate of John Cotta, by its personal representative Yvonne Cotta,

3    filed a claim for damage or injury with the County of Kings.  On September 14, 2012, the Estate

4    of John Cotta, Yvette Cotta, Yvonne Cotta, and Madison Marie Cotta submitted a claim pursuant

5    to Cal. Gov. Code § 910 to Kings County.[2]  Plaintiffs filed a complaint in this Court on March

6    12, 2013.  On April 8, 2013, Defendants filed a motion to dismiss pursuant to F.R.Civ.P.

7    12(b)(6).

8    **III.   Pleading Standards**

9         A motion to dismiss pursuant to F.R.Civ.P. 12(b)(6) is a challenge to the sufficiency of

10   the allegations set forth in the complaint.  "The focus of an Rule 12(b)(6) dismissal . . . is the

11   complaint."  *Schneider v. California Department of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th

12   Cir. 1998).  Dismissal is proper when the complaint lacks a cognizable legal theory or fails to

13   allege sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*,

14   901 F.2d 696, 699 (9th Cir. 1988).  When evaluating a motion to dismiss for failure to state a

15   claim, a court generally accepts the allegations of the complaint as true, construes the complaint

16   in the light most favorable to the party opposing the motion, and resolves all doubts in the

17   pleader's favor.  *Lazy Y Ranch Ltd. v. Behrens*,  546 F.3d 580, 588 (9th Cir. 2008).

18        To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to

19   state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

20   570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to

21   draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

22   *v. Iqbal*, 556 U.S. 662, 663 (2009).  "The plausibility standard is not akin to a 'probability

23   requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

24   *Id., quoting Twombly*, 550 U.S. at 556.  "Where a complaint pleads facts that are 'merely

25   ///

26

27
        [2]  Yvonne Cotta is Cotta's mother as well as the legal representative of the Estate of John Cotta; Madison
28   Marie Cotta is Cotta's sole surviving minor child, represented by her mother, Natalie Pohl.  The record does not
     disclose the identity of Yvette Cotta, who is not a plaintiff in this action.

1  consistent with' a defendant's liability, it 'stops short of the line between possibility and

2  plausibility for entitlement to relief.'" *Id., quoting Twombly*, 550 U.S. at 557.

3       "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

4  factual allegations, a plaintiff's obligations to provide the 'grounds' of his 'entitlement to relief'

5  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

6  of action will not do." *Twombly*, 550 U.S. at 555 (*internal citations omitted*).  Bare assertions

7  amounting to nothing more than a 'formulaic recitations of the elements' are not entitled to an

8  assumption of truth.  *Iqbal*, 556 U.S. at 681.  A court is "free to ignore legal conclusions,

9  unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the

10  form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767

11  (8th Cir. 2003) (*citation omitted*).  A court "will dismiss any claim that, even when construed in

12  the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of

13  action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D.Cal. 1998).  In

14  practice, "a complaint . . . . must contain either direct or inferential allegations respecting all the

15  material elements necessary to sustain recovery under some viable legal theory. *Twombly*, 550

16  U.S. at 562, *quoting Cart Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984),

17  *cert. denied*, 470 U.S. 1054 (1985).  To the extent that the pleadings can be cured by the

18  allegation of additional facts, the plaintiff should be granted leave to amend.  *Cook, Perkiss and*

19  *Liehe, Inc. v. Northern California Collection Service Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)

20  (*citations omitted*).

21       In their numerous challenges to the complaint, Defendants minimize the complaint's

22  factual allegations, draw negative inferences of the alleged facts, and introduce facts not set forth

23  in the complaint, urging a standard of review more appropriate for a summary judgment motion

24  under F.R.Civ.P. 56.  Plaintiffs do not have a burden of proof at the pleading stage.  A motion to

25  dismiss under F.R.Civ.P. 12(b)(6) looks only whether the factual allegations of the pleadings are

26  sufficient to state a plausible claim.  The Court's role is not to weigh evidence or resolve legal

27  disputes, but simply to determine whether Plaintiffs have alleged adequate facts to state prima

28  facie (cognizable) claims.

IV.    **Standing**

    A.    **Mrs. Cotta**

       Claiming uncertainty regarding the proper personal representative of Cotta's estate under California law, Defendants challenge Mrs. Cotta's standing to bring federal constitutional claims on behalf of the estate.  Later in their brief, discussing their objections to the Estate's claims brought pursuant to California law, Defendants repeat their speculation that Mrs. Cotta is not the legal or personal representative of Cotta's estate and contend that all of Plaintiffs' state law claims must be dismissed because Mrs. Cotta failed to satisfy the conditions precedent to filing suit against a public entity prescribed by California Code of Civil Procedure § 377.32.  Evaluating the complaint in the light most favorable to Plaintiffs and declining to credit Defendants' ungrounded speculation about the estate's possible status, this Court declines to conclude that Mrs. Cotta lacks standing to bring claims on behalf of Cotta's estate.

       "Under section 1988, a section 1983 claim that accrued before death survives the decedent when state law authorizes a survival action as a 'suitable remed[y] . . . not inconsistent with the Constitution and laws of the United States . . . .'" *Smith v. City of Fontana*, 818 F.2d 1411, 1416 (9th Cir.), *cert. denied*, 484 U.S. 935 (1987), *overruled on other grounds by HodgersDurgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (*quoting* 42 U.S.C. § 1988).  *See also In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1476 (9th Cir. 1994), *vert. denied*, 513 U.S. 1126 (1995) (stating that a §1983 action survives a party's death).  "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets the state's requirements for bringing a survival action.  *Moreland v. Las Vegas Metropolitan Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

       California law provides that "[u]nless otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period."  Cal. Code Civ. Pro §377.20(a).  The personal representative of Cotta's estate may bring Section 1983 actions that occurred before or at the time of Cotta's death.  Cal. Code Civ. P. §§ 377.20; 377.30.  A personal representative includes an "executor,

1  administrator, administrator with will annexed, special administrator, successor personal

2  representative, public administrator acting pursuant to Section 7660, or a person who performs

3  substantially the same function under the law of another jurisdiction governing the person's

4  status." Cal. Probate Code § 58(a).  In the absence of a personal representative, the action must

5  be brought by the decedent's successor in interest.  Cal. Code Civ. P. § 377.30.

6          The complaint alleges that Plaintiff Yvonne Cotta "is a plaintiff . . . as the legal

7  representative of the Estate of John Cotta."  Doc. 1, ¶4 at 2.  If Yvonne Cotta is not the personal

8  representative as defined by California law, decedent's action must be brought by his successor

9  in interest: his minor daughter, Plaintiff Madison Cotta.  *See* Cal. Probate Code § 6402(a).

10  Accordingly, citing the unpublished decision *Soliz v. City of Bakersfield*, 2012 WL 3645358

11  (E.D.Cal. Aug. 21, 2012) (No. 1:12-cv-00841-LJO-JLT), Defendants allege that the allegation in

12  the complaint is insufficient to establish Yvonne Cotta's standing to bring civil rights claims one

13  (deliberate indifference to safety), two (municipal liability), and three (supervisory liability).

14  Plaintiffs respond that, pursuant to F.R.Civ.P. 9(a)(1)(A) and (B), they need not allege Mrs.

15  Cotta's authority to sue or be sued.

16          *Soliz* is factually distinguishable.  Mrs. Soliz and the decedent's sisters did not allege that

17  they were personal representatives of the decedent's estate, but that they were his successors in

18  interest.  2012 WL 3645358 at *3.  Because Soliz was also survived by his son, however, his

19  mother and sisters could not have been his successors in interest.  *Id.*  Rejecting the claims

20  brought by Mrs. Soliz and Soliz's sisters, the Court discussed the requirement set forth in

21  California Code of Civil Procedure § 377.32 that a person commencing a survival action as a

22  decedent's successor in interest execute and file an affidavit setting forth certain documents and

23  information.  2012 WL 3645358 at *4.  *See also Dillard v. Curtis*, 2004 WL 2496130 at *7 (N.D.

24  Cal. Nov. 3, 2004) (No. C 04-1449 PJH).  Because Mrs. Cotta does not allege that she is bringing

25  this suit as Cotta's successor in interest, Section 377.32 does not require her filing the statutory

26  affidavit as it did Mrs. Soliz.

27          In the context of Defendants' motion to dismiss this case, the Court must assume the truth

28  of Plaintiffs' allegation that Mrs. Cotta is the legal representative of Cotta's estate.  The Court

1  declines to entertain Defendants' speculation regarding Mrs. Cotta's status and denies

2  Defendants' motion to dismiss claims one, two, and three for Mrs. Cotta's lack of standing.

3       **B.    Madison Marie Cotta**

4       Arguing for the first time in their reply brief that Madison Marie Cotta is a minor without

5  the capacity to bring suit and that no guardian ad litem has yet been appointed, Defendants seek

6  to dismiss all claims made on her behalf.  The Court generally refuses to consider arguments

7  improperly raised for the first time in reply briefs.  *See Association of Irritated Residents v. C &*

8  *R Vanderham Dairy*, 435 F.Supp.2d 1078, 1089 (E.D.Cal. 2006).

9       In federal court, a general guardian, a committee, a conservator, or a similar fiduciary

10  may bring suit on behalf of a minor.  F.R.Civ.P. 17 (c)(1).  A minor who lacks a duly appointed

11  representative may bring suit by a next friend or a guardian ad litem.  F.R.Civ.P. 17 (c)(2).

12  Typically, a parent brings suit as "next friend" on his or her child's behalf.  *Gonzalez v. Reno*,

13  212 F.3d 1338, 1351-53 (11th Cir.), *cert. denied*, 530 U.S. 1270 (2000).  Although it does not

14  denominate her as Madison's "next friend," the caption clearly contemplates that Madison's

15  mother, Natalie Pohl, brings suit on her behalf.  Under the letter of the federal rules, Ms. Pohl's

16  acting as Madison Marie's "next friend" would have been sufficient without the need for formal

17  appointment of a guardian ad litem.

18       Nonetheless, Plaintiffs have represented to the Court that Ms. Pohl and Mrs. Cotta have

19  agreed that Mrs. Cotta should bring suit on behalf of both Cotta's estate and Madison Marie.

20  Only one person may act as the duly appointed representative of a minor.  *Neilson v. Colgate-*

21  *Palmolive Co.*, 199 F.3d 642, 650 (2d Cir. 1999).  To resolve the ambiguity that Plaintiffs have

22  created, the Court directs Plaintiffs to submit an application to appoint either Ms. Pohl or Mrs.

23  Cotta to serve as guardian ad litem for Madison Marie.

24       The sufficiency of Madison Marie's claim under the California Tort Claims Act is

25  separate question.  Although Plaintiffs argue that Madison Marie was sufficiently represented by

26  her mother, Natalie Pohl, the notice of claim does not designate Ms. Pohl as her daughter's

27  guardian.  Thus, Defendants argue that Madison Marie has failed to give proper notice of her

28  claim, barring her from bringing suit against them.

"[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to be rejected." Cal. Gov. Code § 945.4. The written claim must include the claimant's "name and post office address," the "date, place and other circumstances of the occurrence . . . which gave rise to the claim," and a "general description" of the "injury, damage, or loss incurred so far as it may be known at the time of presentation of the claim." Cal. Gov. Code § 910. The Estate of John Cotta, Yvette Cotta, Yvonne Cotta, and Madison Marie Cotta submitted their claim in compliance with Section 910 on September 14, 2012. Doc. 12-1 at 7.

The Claims Act is intended to protect government agencies from stale and fraudulent claims, to provide an opportunity for timely investigation, and to encourage settlement of meritorious claims. *Johnson v. San Diego Unified School District*, 217 Cal.App.3d 692, 697 (1990). If the underlying purposes have been satisfied, a court must determine whether the notice substantially complies with the requirements. *Id.* "Where there has been an attempt to comply but the compliance is defective, . . . the court must ask whether sufficient information is disclosed on the face of the filed claims 'to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit.'" *Loehr v. Ventura County Community College Dist.*, 147 Cal.App.3d 1071, 1083 (1983), *quoting City of San Jose v. Superior Court*, 12 Cal.3d 447, 456 (1974). In this case, Plaintiffs' claim clearly identified their attorney and his contact information. Plaintiffs' failure to move for appointment of a guardian *ad litem* for Madison Marie prior to filing their notice of claim did not frustrate the purposes of the notice. Accordingly, the Court finds that the notice substantially complied with the statutory requirements and Madison Marie's claims may proceed.

**V.**   **Judicial Notice**

For the first time in their reply brief, Defendants requested that the Court take judicial notice of a support order entered against "John Cotta" on behalf of Ashley Bridger, the mother of a child named Kaylianna. Defendants contend that because Kaylianna is Cotta's successor in interest, she is an indispensable party to this case, requiring dismissal.

Multiple reasons counsel against this Court's taking judicial notice of the support order. When considering a motion to dismiss, the Court must credit the allegations of the complaint: Plaintiffs allege that Madison Marie is Cotta's sole surviving child.  Further, as previously stated, the Court generally refuses to consider arguments improperly raised for the first time in reply briefs.  *See Association of Irritated Residents*, 435 F.Supp.2d at 1089.  But even if this Court were to consider Defendants' argument, it would not take judicial notice of the support order.

Pursuant to Fed.R.Evid. 201(b)(2), a court may take judicial notice of an adjudicative fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Matters subject to reasonable dispute are not properly subject to judicial notice: a court's considering them in a motion to dismiss would convert it to a summary judgment motion.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n. 9 (9th Cir. 2012).  A brief look at the telephone directory or the results of an internet search reveals numerous individuals named "John Cotta" in the Central Valley; "John Cotta" is a common name throughout California.  Because nothing in the order submitted by Defendants ties the "John Cotta" against whom the support order was entered to Plaintiffs' decedent, its meaning for purposes of this case is reasonably subject to dispute.  Judicial notice of the order is not appropriate.

## VI.   Federal Civil Rights Claims

### A.   Eighth or Fourteenth Amendment?

Defendants seek dismissal of Claims One, Two, and Three, which allege violations of the Eighth and Fourteenth Amendments, contending that, once Cotta was convicted, he ceased being a pretrial detainee protected by the Fourteenth Amendment.  Plaintiffs respond that their claims were properly asserted, given the interrelation of the Eighth and Fourteenth Amendments.  The Court agrees with Plaintiffs.

"[P]retrial detainees . . . possess greater constitutional rights than prisoners."  *Stone v. City and County of San Francisco*, 968 F.2d 850, 857 n. 10 (9th Cir. 1992), *cert. denied*, 506 U.S. 1081 (1993).  Under the Due Process Clause, a pretrial detainee may not be punished before he has been convicted of a crime in accordance with due process of law.  *Bell v. Wolfish*, 441 U.S.

520, 535 (1979).  "A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Id.* at 536 n. 16. Killed after his conviction, but before sentencing, Cotta's status at the time of his death is ambiguous under the Supreme Court's language in *Wolfish*.

Cotta's anomalous status does not mean that Plaintiffs' claims are not cognizable.  Courts typically borrow from Eighth Amendment jurisprudence when analyzing the rights of pretrial detainees.  *See Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir.), *cert. denied*, 555 U.S. 1031 (2008).  Thus, although a court must analyze a pretrial detainee's claims under the substantive due process clause of the Fourteenth Amendment, it must evaluate those claims using the elements of the Eighth Amendment claim.  *Lolli v. County of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003).  "In light of the Supreme Court's observation that the due process rights of pretrial detainees are at least as great as the Eighth Amendment protections available to a convicted prisoner, we have recognized that, even though the pretrial detainee's rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a *minimum standard of care* for determining their rights."  *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003) (*internal citations and quotations omitted*).  Thus, a defendant's violation of Eighth Amendment standards will always be sufficient to establish a violation of due process rights under the Fourteenth Amendment.  *Id.* at 1121 n. 11.

A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Whether or not Cotta is properly characterized as a pretrial detainee or a sentenced prisoner, the complaint's citation of both the Eighth and Fourteenth Amendments does not require dismissal.  Granting Plaintiffs the benefit of all favorable inferences, the Court declines to dismiss their constitution claims based on Defendants' unsupported assertion that Cotta was not a pretrial detainee at the time he died.

### B. Deliberate Indifference to Serious Safety Needs (Claim One)

Cotta's Estate contends that Sgt. Henderson violated Cotta's constitutional right to safety by permitting Cotta and Parnell to share a cell despite Cotta's having made inculpatory

statements regarding Parnell's role in their crime and despite Henderson's knowledge of Parnell's history of violence and gang ties. Henderson contends that the alleged facts are insufficient to state a claim against her.

The complaint alleges that Henderson was the individual responsible for initially approving Cotta's request to share a cell with Parnell. Henderson did so despite her own skepticism about the arrangement and despite having knowledge that Cotta had made inculpatory statements about Parnell and that Parnell had a history of violent crime and gang association. Throughout a trial in which Parnell and Cotta advanced inconsistent defenses and after both were convicted and faced lengthy prison terms, Henderson continued to approve the housing arrangement. She did so despite multiple rule violations by both Cotta and Parnell, numerous panic alarms in the vicinity of their cell, increasing tension in their relationship, and Parnell's increasingly erratic behavior. She continued to approve the arrangement despite threatening to separate Cotta and Parnell if either again violated jail rules. Henderson never investigated or assessed Cotta's or Parnell's custody status after initially approving it.

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offense against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1992) (*citations and internal quotations omitted*). "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982), *abrogated on other grounds by Sandin v. O'Connor*, 515 U.S. 472 (1995). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *See Farmer*, 511 U.S. at 834. In the context of physical safety, a prison official violates the Eighth Amendment when (1) the deprivation alleged is sufficiently serious, and (2) the official has a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834.

To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must

also draw the inference." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir.),
*amended*, 75 F.3d 448 (9th Cir.), *cert. denied*, 516 U.S. 916 (1995).

A substantial risk of serious harm requires the Court to consider both the scientific and
statistical seriousness of potential harm and whether exposing anyone unwillingly to the alleged
risk violates contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 36 (1993).
Defendants argue that since Cotta and Parnell were celled together for over a year before Parnell
killed Cotta, the threat to Cotta's safety was not sufficiently serious. That a prisoner has not yet
been harmed by the alleged risk does not preclude him from seeking relief. *Id.* at 33. That
Parnell did not immediately injure or kill Cotta does not mean that a substantial risk of an assault
resulting in injury or death did not exist before Parnell finally murdered him.

In practice, a claimant may successfully establish this element by demonstrating that he
has been deprived of something sufficiently serious. *See Thomas v. Ponder*, 611 F.3d 1144,
1150 (9th Cir. 2010) (finding deprivation of regular exercise sufficiently serious); *Foster v.
Runnels*, 554 F.3d 807, 813 (9th Cir. 2009) (finding denial of 16 meals in 23 days to be
sufficiently serious). Cruel and unusual punishment occurs whenever an inmate is subjected to
pain or endangered with no penological purpose. *Foster*, 554 F.3d at 814. Cotta's death at the
hand of another inmate meets this standard.

In addition, "[t]o establish a prison official's deliberate indifference, an inmate must show
that the official was well aware of a risk to the inmate's health or safety and that the official
deliberately disregarded the risk." *Foster*, 554 F.3d at 814. To prove knowledge of the risk, the
prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be
sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074,
1077 (9th Cir. 1995).

Obviousness does not require that the defendant prison official had specific knowledge
that the situation would have a certain outcome. *Thomas*, 611 F.3d at 1151. It is sufficient that a
prisoner demonstrate documentation that the risk was "longstanding, pervasive, well
documented, or expressly noted by prison officials in the past and the circumstances suggest that
the defendant-officer being sued had been exposed to information concerning the risk and thus

12

1    'must have known about it.'" *Id.*   Under *Farmer*, the Court must "measure what is 'obvious' in

2    light of reason and the basic general knowledge that a prison official may be presumed to have

3    obtained" in light of such factors as his job responsibilities and his access to prison records.

4    *Thomas*, 611 F.3d at 1151.   Thus, in *Thomas*, in which the circuit court reversed the district

5    court's grant of summary judgment to prison officials, the circuit court declared that "[a]ny

6    argument that the risk to Thomas's health [from denial of exercise] was not 'obvious' fails as a

7    matter of law." *Id.*   Here, the complaint states a cognizable claim that in housing Cotta with

8    Parnell, Henderson knew or had to have known that (1) Parnell had a history of violence and

9    gang membership, (2) Cotta had given inculpatory information against Parnell, (3) both Cotta

10   and Parnell had repeatedly violated jail rules, (4) Parnell's behavior had become increasingly

11   erratic, and (5) Parnell's conviction meant that he had little to lose through further violence.

12   These combined factors are sufficient to state a claim that the risk of Parnell's assaulting Cotta

13   was obvious.

14          Finally, Plaintiff must allege facts sufficient to support the conclusion that Henderson

15   knowingly disregarded the obvious substantial risk to Cotta, that is, was "deliberately indifferent"

16   to the risk to Cotta.   "[A] prison official cannot be found liable under the Eighth Amendment for

17   denying an inmate humane conditions of confinement unless the official knows of and disregards

18   an excessive risk to inmate health and safety; the official must be aware of facts from which the

19   inference could be drawn that a substantial risk of harm exists, and he must also draw the

20   inference." *Farmer*, 511 U.S. at 837.   "[A]n Eighth Amendment claimant need not show that a

21   prison official acted or failed to act believing that harm actually would befall an inmate; it is

22   enough that the official acted or failed to act despite his knowledge of a substantial risk of a

23   serious harm." *Id.* at 842.   "Whether a prison official had the requisite knowledge of a substantial

24   risk is a question of fact subject to demonstration in the usual ways, including inference from

25   circumstantial evidence, and a fact finder may conclude that a prison official knew of a

26   substantial risk from the very fact that the risk was obvious." *Id.* (*internal quotes and citations*

27   *omitted*).   Since the complaint alleges sufficient facts from which a fact finder could conclude

28   that Henderson had knowledge of the obvious risk to Cotta, but nonetheless assigned him to

1  share a cell with Parnell and continued the arrangement despite developments suggesting

2  increased risk, it alleges a cognizable claim of indifference to safety.

3        **C.     Henderson's Qualified Immunity (Claim One)**

4        Henderson contends that even if the complaint states a cognizable claim that she was

5  deliberately indifferent to Cotta's safety, she is entitled to qualified immunity from Plaintiffs'

6  claim.  Plaintiffs counter that although the facts alleged in the complaint illustrate that Henderson

7  was aware of a substantial, documented, and longstanding risk to Cotta, Henderson failed to take

8  any preventive measures.

9        "Government officials performing discretionary functions [are generally entitled to] a

10  qualified immunity, shielding them from civil damages liability as long as their actions could

11  reasonably have been thought consistent with the rights they are alleged to have violated."

12  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (*citations omitted*).  "Qualified immunity

13  balances two important interests–the need to hold public officials accountable when they exercise

14  power irresponsibly and the need to shield officials from harassment, distraction, and liability

15  when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  All

16  public officials are protected except for "the plainly incompetent or those who knowingly violate

17  the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Whether qualified immunity protects an

18  official from liability for an allegedly unlawful action generally depends on whether the action

19  was objectively reasonable in light of the clearly established legal rules when the official took the

20  action.  *Anderson*, 483 U.S. at 638.

21        To resolve a claim of qualified immunity, a court must determine whether, taken in the

22  light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if

23  so, whether the right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Courts

24  may address *Saucier*'s two-step analysis in the order most appropriate to the facts of the

25  individual case.  *Pearson*, 55 U.S. at 242.

26        Since we have already determined that the complaint states a cognizable constitutional

27  claim against Henderson for deliberate indifference to Cotta's safety, the only remaining question

28  ///

is whether the right was clearly established such that a reasonable official would have understood that her conduct violated Cotta's right to safety. *See Saucier*, 533 U.S. at 201.

Officials are charged with knowing the laws governing their conduct. *Harlow v, Fitzgerald*, 457 U.S. 800, 818-19 (1982). The Supreme Court has rejected the proposition that the law concerning violation of the Eighth Amendment is only clearly established when prior cases have addressed facts "materially similar" to those in the case at issue. *Hope v. Peltzer*, 536 U.S. 730, 739 (2002). That the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment is well established. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Similarly well established is the standard that jail officials may not ignore known or obvious risks of substantial harm to health or safety. *Farmer*, 511 U.S. at 834-37. Evaluating the complaint in the light most favorable to Plaintiffs, as a court must do when addressing a motion to dismiss pursuant to R. 12(b)(6), this Court must conclude that because Henderson approved Cotta's sharing a cell with Parnell, despite knowing of substantial risks to Cotta's safety and having expressed reservations of the advisability of the arrangement, she is not entitled to qualified immunity at this stage of the proceedings.

The Court reaches this determination despite *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049-50 (9th Cir. 2002), on which Defendant Henderson relies. *Ford* is distinguishable. The *Ford* court evaluated the applicability of qualified immunity in the course of a summary judgment motion after discovery had more fully revealed specific facts and circumstances on which the prison officials had reasonably relied in reaching their decision to permit Ford to share a cell with the inmate who killed him. Henderson is free to renew her claim if subsequent discovery reveals facts and circumstances sufficient to place her conduct within the confines of qualified immunity.

### D.    Municipal Liability (Claim Two)

In Claim Two, Cotta's Estate contends that (1) Defendant Kings County's failure to adequately train and supervise its employees caused the constitutional violations against Cotta, and (2) that Kings County failed to promulgate appropriate policies and procedures to prevent Cotta's death, including systematic understaffing of the Kings County Jail and failure to detect

1  and communicate inmate violence.  Defendants respond that Plaintiffs fail to plead a cognizable

2  claim of municipal liability.

3      Notwithstanding Plaintiff's "factual" allegation to the contrary (Doc. 1, ¶ 6 at 3), a local

4  governmental body may not be held responsible for the acts of its employees under a *respondeat*

5  *superior* theory of liability.  *Board of County Commissioners v. Brown*, 520 U.S. 397, 403

6  (1997).   Instead, a plaintiff must allege sufficient facts to support the proposition that the

7  alleged constitutional violation was a product of the local governmental unit's policy or custom.

8  *Id.*

9              **1.     Municipal Policy or Custom**

10     "Official municipal policy includes the decisions of a government's lawmakers, the acts

11  of its policy making officials, and practices so persistent and widespread as to practically have

12  the effect of law."  *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).  A policy "promulgated,

13  adopted, or ratified by a local government entity's legislative body unquestionably satisfies

14  *Monell*'s[3] policy requirement."  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir.

15  1989), *overruled on other grounds by Bull v. City & County of San Francisco*, 595 F.3d 964 (9th

16  Cir. 2010).  A policy of inaction may be a municipal policy within the meaning of *Monell*.

17  *Waggy v. Spokane County, Washington*, 594 F.3d 707, 713 (9th Cir. 2010).

18     Even if a plaintiff cannot allege an explicit policy, he or she may establish municipal

19  liability by alleging facts which show that the local government had a permanent and well-settled

20  practice that gave rise to the constitutional violation.  *City of St. Louis v. Praprotnik*, 485 U.S.

21  112, 127 (1988).  Random acts or single incidents of misconduct are insufficient to establish

22  municipal custom.  *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996).  If a plaintiff can

23  demonstrate the existence of a custom, he or she need not demonstrate that official policy makers

24  had actual knowledge of the custom.  *Id*.

25     Except for alleging that jail policy was to monitor inmates' court cases (Doc. 1, ¶ 12 at 5),

26  Plaintiff has alleged no facts regarding any municipal policy or custom that relates to any

27  violation of Cotta's rights under the Eighth or Fourteenth Amendment.  It alleges only that

28

---

[3]  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

"Plaintiff is informed and believes that the customs, policies, and practices of Kings County contributed to the constitutional violations alleged herein, and, as permitted by applicable law, those customs, policies and practices will be specified at a later point in this proceeding, after an appropriate opportunity to conduct discovery." Doc. 1, ¶ 6 at 3.  Because this allegation is not sufficient to state a cognizable claim, this Court will dismiss this portion of Claim Two without prejudice, with leave for Plaintiff to amend this portion of the complaint.

## 2. <u>Failure to Train or Supervise</u>

A plaintiff may also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989).  Stating a cognizable claim requires factual allegations supporting three elements.  *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).  First, the training program must be inadequate in relation to the tasks the particular officers must perform.  *Id.*  A training program will be deemed adequate if it "enable[s] officers to respond properly to the usual and recurring situations with which they must deal."  *Id., quoting City of Canton, Ohio*, 489 U.S. at 391.

Second, the county officials must have been deliberately indifferent to the rights of persons with whom the local officials come into contact.  *Merritt*, 875 F.2d at 770.  To satisfy this element, a plaintiff must allege facts indicating that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the [governmental unit] can reasonably be said to have been deliberately indifferent to the need. "  *Id., quoting City of Canton, Ohio*, 489 U.S. at 390.

Finally, the inadequacy of the training must have actually caused the constitutional deprivation at issue.  *Merritt*, 875 F.2d at 770.

Having failed to allege any facts whatsoever regarding the training of prison personnel, Cotta's Estate does not state a cognizable claim of inadequate training.  Because this allegation is not sufficient to state a cognizable claim, this Court will dismiss this portion of Claim Two without prejudice, with leave for Plaintiff to amend this portion of the complaint.

///

1

### E.    <u>Supervisory Liability (Claim Three)</u>

In the third claim, Cotta's Estate alleges that by failing to adequately supervise the Kings

County Jail staff and inmates, Defendants Sheriff Dave Robinson, Assistant Sheriff Dave

Putnam, and Sgt. Henderson were deliberately indifferent to Cotta's safety needs.  The complaint

alleges that Robinson, Putnam, and Henderson "were deliberately indifferent in failing to take

other measures to prevent this incident, including engaging in inadequate training and briefings

regarding inmate conflicts, and potential conflicts and also in systematically understaffing the

jail." Doc. 1, ¶ 33 at 10.  Defendants respond that the complaint fails to allege the individual

personal involvement and causal connection required to hold each supervisor liable for a

constitutional violation.

> Liability under section 1983 arises only upon a showing of personal participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).  A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under section 1983. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984).

*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the individual's own actions, has violated the

Constitution." *Iqbal*, 556 U.S. at 676.  *See, e.g., Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir.

2011) ("[W]hen a supervisor is found liable based on deliberate indifference, the supervisor is

being held liable for his or her own culpable action or inaction, not vicariously liable for the

culpable action or inaction of his or her subordinates"); *Corales v. Bennett*, 567 F.3d 554, 570

(9th Cir. 2009); *Preschooler II v. Clark County School Board of Trustees*, 479 F.3d 1175, 1182

(9th Cir. 2007) (concluding that allegations that school officials knew of the alleged violation and

failed to take corrective action were sufficient to state a claim); *Harris v. Roderick*, 126 F.3d

1189, 1204 (9th Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998) (concluding that allegations that

FBI agents had developed a plan and then encouraged another agent to shoot a suspect were

sufficient to state a claim).

*///*

18

1    Although Plaintiff may be able to allege the requisite individual liability of Robinson,

2    Putnam, and Henderson, the allegations of the complaint are not sufficient to do so.  The Court

3    will dismiss Claim Three without prejudice, granting Plaintiff leave to amend.

4           **F.**     **Robinson's and Henderson's Qualified Immunity (Claim Three)**

5    Defendants contend that Defendants Robinson and Henderson are entitled to qualified

6    immunity on Claim Three.  Having dismissed Claim Three based on its vague and insufficient

7    factual allegations, the Court declines to reach this issue, without prejudice to Defendants'

8    renewing their arguments in the event that Cotta's Estate elects to amend Claim Three and

9    alleges a cognizable claim of Robinson's or Henderson's liability.

10          **G.**     **Denial of Familial Relationship (Claim Four)**

11   In Claim Four, Mrs. Cotta and Madison Marie allege a loss of family relationship in

12   violation of their Fourteenth Amendment substantive due process rights.  Defendants respond

13   that Claim Four fails to allege facts sufficient to establish a cognizable claim for denial of

14   familial relationship.

15   That a parent has a fundamental liberty interest in the companionship and society of his or

16   her child is well established.  *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001).

17   Similarly, a child has a constitutionally cognizable interest in his or her relationship with a

18   parent.  *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991), *cert. denied*, 506 U.S.

19   972 (1992); *Smith*, 818 F.2d at 1418.  "[T]he fundamental right to familial association is a

20   particularly significant liberty interest."  *United States v. Wolf Child*, 699 F.3d 1082, 1092 (9th

21   Cir. 2012).  The state's interference with a family relationship without due process of law is

22   remediable under Section 1983.  *Lee*, 250 F.3d at 685.  Such claims are brought under the

23   substantive due process provisions of the Fourteenth Amendment.  *Curnow*, 952 F.2d at 325.

24   "[T]he due process guarantee does not entail a body of constitutional law imposing

25   liability whenever someone cloaked with state authority causes harm."  *County of Sacramento v.*

26   *Lewis*, 523 U.S. 833, 848 (1998).  The Constitution does not guarantee "due care on the part of

27   state officials"; liability for negligence is below the threshold of constitutional due process.  *Id.*

28   To impose liability for violation of an individual's substantive due process rights, the official's

1  actions must "shock the conscience." *Id.* at 846 *ff. See also Wilkinson v. Torres*, 610 F.3d 546,

2  555 (9th Cir. 2010); *Smith*, 818 F.2d at 1418.

3       Deliberate indifference by prison officials, who have the time to make unhurried

4  judgments, meets this threshold. *Lewis*, 523 U.S. at 853. Deliberate indifference is a subset of

5  behavior that shocks the conscience. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). It

6  occurs when the official acted "for purposes of oppression," rather than in furtherance of

7  legitimate state interests. *Daniels v. Williams*, 474 U.S. 327, 331(1986). The state has no

8  legitimate interest in interfering with the liberty interest of a familial relationship through

9  violations of the decedent's constitutional rights. *Smith*, 818 F.2d at 1419-20. *See also Ostling*

10  *v. City of Bainbridge Island*, 872 F.Supp.2d 1117, 1127 (W.D. Wash. 2012) (finding that parents

11  had standing to pursue substantive due process claim for loss of their son's companionship since

12  the facts indicated that the defendants had time for actual deliberation before initiating the action

13  that led to the son's death).

14       Perhaps as an effort to hedge their bets, Plaintiffs allege both that Defendants'

15  misconduct constituted deliberate indifference (Doc. 1, ¶ 38 at 11) and that Defendants'

16  misconduct was "malicious, reckless and/or accomplished with a conscious disregard of

17  decedent's rights." Doc. 1, ¶ 40 at 11. As a result, Plaintiffs must amend Claim Four to resolve

18  these inconsistent standards. Once Plaintiffs do so, Count Four will state a cognizable claim

19  against Defendant Henderson. Whether Plaintiffs can state a claim against any other Defendant

20  depends on their ability to amend their complaint to state a cognizable constitutional claim

21  against that Defendant. Claim Four is dismissed with leave to amend.

22  **VII.**  **State Claims**

23      **A.**  **Federal Jurisdiction of State Claims**

24       Section 1983 does not provide a cause of action for violations of state law. *See Weilburg*

25  *v. Shapiro*, 488 F.3d 1202, 1207 (9th Cir. 2007)*; Galen v. County of Los Angeles*, 477 F.3d 652,

26  662 (9th Cir. 2007); *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada County,*

27  *Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997); *Lovell v. Poway Unified School Dist.*, 90 F.3d 367,

28  370 (9th Cir. 1996); *Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986); *Ybarra v. Bastian*, 647

F.2d 891, 892 (9th Cir.), *cert. denied*, 454 U.S. 857 (1981).  Pursuant to 28 U.S.C. § 1367(a),

however, in any civil action in which the district court has original jurisdiction, the district court

"shall have supplemental jurisdiction over all other claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III," except as

provided in subsections (b) and (c).

   "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction

over state law claims under 1367(c) is discretionary."  *Acri v. Varian Assoc., Inc.*, 114 F.3d 999,

1000 (9th Cir. 1997).  "The district court may decline to exercise supplemental jurisdiction over a

claim under subsection (a) if . . . the district court has dismissed all claims over which it has

original jurisdiction."  28 U.S.C. § 1367 (c)(3).  The Supreme Court has cautioned that "if the

federal claims are dismissed before trial . . . the state claims should be dismissed as well."

*United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966).

   To the extent that this order denies Defendants' motion to dismiss Claim One, the option

of federal pendant jurisdiction remains.  At this time, the Court elects to recognize pendant

jurisdiction over Plaintiffs' state claims.  Should future proceedings result in the dismissal of all

federal claims, however, this Court reserves the right to dismiss the state claims.

### B.   Negligent Hiring, Retention, Supervision, Training, and Staffing (Claim Five)

   Cotta's Estate alleges a common law claim under California state law for negligent

hiring, retention, supervision, training, and staffing.  Defendants protest that the complaint fails

to specifically plead a claim.

### 1.   Kings County

   The Tort Claims Act is intended to limit government liability.  *Eastburn v. Regional Fire

Protection Auth.*, 31 Cal.4th 1175, 1179 (2003).  A public entity is not liable for an injury,

whether such injury arises out of an act or omission of the public entity or a public employee or

any other person, except as otherwise provided by statute.  Cal. Gov. Code § 815.  A California

appeals court summarized applicable law:

   When a party is injured by a tortfeasor and seeks to affix liability on the
   tortfeasor's employer, the injured party ordinarily must demonstrate either (1) the
   employer violated a duty of care it owed to the injured party and this negligence

21

was a proximate cause of the resulting injury (the *direct* liability theory), or (2) the tortfeasor-employee was liable for committing the tortious conduct that caused the injury while acting within the course and scope of his or her employment (the *vicarious* liability theory).  (see generally 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment, §§ 167-168, pp. 211-213.)  When the employer is a governmental agency, the statutory framework permits the injured party to pursue *vicarious* liability theory in accordance with these general common law principles.  (Gov. Code, § 815.2)  However, the statutory framework requires, as a condition to the injured party's recovery on a *direct* liability theory against a governmental agency, that the injured party identify a specific statute declaring [the entity] to be liable, or at least creating some specific duty of care by the agency in favor of the injured party.  (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183 . . . ; accord, *Searcy v. Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, 802 . . . . .)

 *de Villers v. County of San Diego*, 156 Cal.App.4th 238, 247 (2007).

No statutory basis exists for Defendant County to be directly liable.  Indeed, a public entity is not liable for an injury to any prisoner.  Cal. Gov. Code § 844.6(a)(2).  Nor does the complaint allege any independent statutory duty from Defendant County to Cotta.  "[A] direct claim against a governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained."  *de Villers*, 156 Cal.App.4th at 255.  In the absence of duty, there can be no tort liability."  *Munoz v. City of Union City*, 148 Cal.App.4th 173, 182 (2007).  Under California law, Plaintiff cannot maintain a direct claim against Defendant Kings County.  Thus, with regard to Defendant Kings County, the Court will dismiss Claim Five with prejudice.

## 2.   **Individual Defendants**

In California, a jailer owes a prisoner a duty of care to protect them from foreseeable harm.  *Giraldo v. California Dep' of Corr. and Rehab.*, 168 Cal.App.4th 231, 252 (2008).  An individual public employee may be liable for injuries caused by his or her own negligent or wrongful act or omission.  Cal. Gov. Code § 844.6(d).  Such individual liability may include "negligent training, retention, supervision or control of employees or agents, approval of the actions of subordinates, actual awareness of an unlawful custom or practice, or responsibility for developing and promoting policies causing the alleged injury," but not simply ratification of a subordinate's decision.  *Baker v. County of Sonoma*, 2009 WL 330937 at *5 (N.D. Cal. Feb. 10, 2009) (No. C-08-03433 EDL).  As was the case in Claims Two and Three, however, the complaint fails to allege any facts whatsoever regarding negligent hiring, retention, supervision,

training, and staffing.  Plaintiff merely alleges legal conclusions of such negligence, which are insufficient to state a claim in federal court.  Accordingly, the Court will dismiss Claim Five, granting Plaintiff leave to amend.

### C.   Wrongful Death (Claim Six)

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs."  *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1263 (2006).  For a wrongful death action to survive a motion to dismiss, the complaint must contain allegations as to all elements of actionable negligence.  *Jacoves v. United Merchandising Corp.,* 9 Cal.App.4th 88, 105 (1992).  "Negligence involves the violation of a legal duty . . . by the defendant to the person injured, e.g., the deceased in a wrongful death action."  *Id.*  The elements of a negligence claim are (1) duty, (2) breach, (3) causal connection, and (4) actual loss.  *Id.*  Defendants do not dispute that Madison Marie has alleged a cause of action for wrongful death, instead arguing that  (1) Henderson is statutorily immune from Madison Marie's claim; (2) County is statutorily immune; and (3) the complaint includes no allegations that Robinson participated in any decisions about Cotta during his incarceration.

#### 1.   Kings County

Except for certain statutory exceptions that do not apply in this case, a public entity is not liable for an injury to a prisoner.  Ca. Gov. Code § 844.6(a)(2).  "[S]ection 844.6 precludes actions against public entities for the wrongful death of prisoners regardless of the underlying theory of liability."  *May v. County of Monterey*, 139 Cal.App.3d 717, 721 (1983).  *See also Lowman v. County of Los Angeles*, 127 Cal.App.3d 613, 616 (1982) (holding that Section 844.6 granted public entities immunity from liability for prisoner's wrongful death).  Kings County is immune from Madison Marie's claim.

#### 2.   Henderson

"Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Cal. Gov. Code § 820.2.

1  Henderson maintains that, since she determined Cotta's cell assignment through the exercise of

2  her discretion, she is immune from liability for the wrongful death claim.

3      Determining whether a particular act was discretionary requires more than applying the

4  literal definition of 'discretionary" to the facts of the case. *Johnson v. State of California*, 69

5  Cal.2d 782, 787 (1968).  When a court attempts "to determine, as a purely literal matter, 'where

6  the ministerial and imperative duties end and the discretionary powers begin . . . [I]t would be

7  difficult to conceive of any official act, no matter how directly ministerial, that did not admit of

8  some discretion in the manner of its performance, even if it involved only the driving of a nail.'"

9  *Id.* at 788, *quoting Ham v. County of Los Angeles*, 46 Cal.App. 148, 162 (1920).  Instead, a

10  court's determination of discretion should rely on "policy considerations relevant to the purposes

11  of granting immunity to the governmental agency whose employees act in discretionary

12  capacities." *Johnson*, 69 Cal.2d at 789.

13      "Although it may not be possible to set forth a definitive rule which would determine in

14  every instance whether the agency in a particular case should have immunity, such as the

15  importance to the public of the function involved, the extent to which governmental liability

16  might impair free exercise of the function, and the availability to individuals affected of remedies

17  other than tort suits for damages." *Lipman v. Brisbane Elementary School District*, 55 Cal.2d

18  224, 230 (1961).  In the course of the 1963 codification of the sovereign immunity law, the

19  Senate Committee on Judiciary Comment to Section 820.2 specifically approved the *Lipman*

20  approach to determine discretionary acts. *Johnson*, 69 Cal. 2d at 789 n. 4.  The court

21  summarized:

22      Immunity for 'discretionary' activities serves no purpose except to assure that
       courts refuse to pass judgment on policy decisions in the province of coordinate
23      branches of government.  Accordingly, to be entitled to immunity the state must
       make a showing that such a policy decision, consciously balancing risks and
24      advantages, took place.  The fact that an employee normally engages in
       'discretionary activity' is irrelevant if, in a given case, the employee did not render
25      a considered decision.

26      69 Cal.2d at 795 (*citations omitted*).

27      In *Johnson*, the plaintiff was assaulted by a foster child who had been placed in her care

28  upon parole from a youth correctional facility.  *Id.* at 784-785.  The plaintiff alleged that the

24

parole agent had acted negligently in knowingly placing a child with homicidal tendencies and a known history of violence and cruelty to animals in the plaintiff's home without any disclosure to plaintiff of the child's dangerous propensities. *Id.* The defendant argued that the parole officer was immune for making a discretionary judgment as he had to exercise his professional judgment and use discretion in determining whether all or part of the child's psychiatric and institutional records should be provided to the plaintiff foster parents. *Id.* at 787. The court concluded that the initial decision to place a youth on parole compelled immunity, but that the subsequent implementation of that policy decision did not:

> The Youth Authority unquestionably makes some decisions falling within the 'discretionary functioning language of section 820.2, as we have heretofore defined it. As to the determination of whether to place a youth on parole, for example, the Legislature has specifically granted to the Youth Authority the power to weigh potential risks and benefits and to establish standards: 'When, in the opinion of the Youth Authority, any person committed to or confined in any such school deserves parole according to regulations established for the purpose, and it will be to his advantage to be paroled, the Authority may grant parole under such conditions as it deems best . . . .' (Welf. & Inst. Code, § 1176.) The decision to parole thus comprises the resolution of policy considerations, entrusted by statute to a coordinate branch of government, that compels immunity from judicial reexamination.
>
> Once an official reaches the decision to parole to a given family, however, the determination as to whether to warn the foster parents of latent dangers facing them presents no reasons for immunity; to the extent that a parole officer consciously considers pros and cons in deciding what information, if any, should be given, he makes such a determination at the lowest, ministerial rung of official action. Judicial abstinence from ruling upon whether negligence contributed to this decision would therefore be unjustified; coupled with administrative laxness that caused the loss in the first place, it would only result in the failure of governmental institutions to serve the injured individual.

69 Cal.2d at 795-96 (*footnote omitted*).

*See also list of supporting cases compiled at* 69 Cal.2d at 796.

In summary, "although a basic policy decision (such as standards for parole) may be discretionary and hence warrant governmental immunity, subsequent ministerial actions in the implementation of that basic decision still must face case-by-case adjudication on the question of negligence." *Id.* at 797. *See also Thompson v. County of Alameda*, 27 Cal.3d 741 (1980) (employing the procedure for analysis prescribed by *Johnson*).

Applying these principles here, the discretionary activities immunized by statute occurred at a level above Henderson's ministerial determination of whether Cotta and Parnell should share

a cell.  The rules, regulations, or other guidelines by which Henderson would have been guided in determining whether or not to assign any two prisoners to the same cell were discretionary policy decisions for which their maker(s) would have been entitled to immunity under Cal. Gov. Code § 820.2.  Henderson's application of those rules, regulations, or guidelines to determine whether Cotta and Parnell would be assigned to the same cell was a ministerial determination that is not entitled to immunity under Section 820.2.

The Court denies Defendants' motion to dismiss Madison Marie's wrongful death claim against Henderson.

### 3.    Robinson

Defendants contend that because the complaint fails to allege sufficient facts to establish the elements of the wrongful death claim against Sheriff Robinson, Claim Six must be dismissed as to Robinson.  This Court agrees and will dismiss Madison Marie's claim against Robinson, without prejudice, granting Plaintiff leave to amend the claim within thirty days.

### D.    Violations of Cal. Civil Code § 52.1(b) (Claim Seven)

"Plaintiffs concede that this District's interpretation of Civil Code § 52.1 prevents them from pursuing both wrongful death and survival claims based on that statute."  Accordingly, the Court will dismiss Claim Seven.

## VIII.   Summary and Order

Accordingly, this Court hereby ORDERS:

1.    Defendants' motion to dismiss for lack of standing all claims brought by Mrs. Cotta is denied.

2.    Defendants' motion to dismiss for lack of standing all claims brought by Madison Marie Cotta is denied.  Within ten days of this order, Plaintiff will file with this Court an application to appoint either Mrs. Cotta or Ms. Pohl as *guardian ad litem* of Madison Marie Cotta.

3.    Defendants' motion for judicial notice of a support order against "John Cotta" in favor of Ashley Bridger is denied.

///

4.    Defendants' motion to dismiss Claims One, Two, and Three due to the complaint's reference to both the Eighth and Fourteenth Amendments to the U.S. Constitution is denied.

5.    Defendants' motion to dismiss Claim One for failure to state a claim is denied.

6.    Defendants' motion seeking a determination that Sgt. Henderson is protected by qualified immunity on Claim One is denied without prejudice to Defendants' renewing their motion in the event that additional evidence supports reconsideration of this finding following discovery in this matter.

7.    Defendants' motion to dismiss Claims Two, Three, and Four for failure to state a claim is granted without prejudice.  Plaintiffs may amend the complaint within 45 days.

8.    With regard to Kings County, Claim Five is dismissed with prejudice.

9.    With regard to the individual defendants, Claim Five is dismissed without prejudice. Plaintiffs may amend the complaint within 45 days.

10.   With regard to Kings County, Claim Six is dismissed with prejudice.

11.   With regard to Sgt. Henderson, Defendants' motion to dismiss Claim Six is denied.

12.   With regard to Sheriff Robinson, Claim Six is dismissed without prejudice.  Plaintiffs may amend the complaint within 45 days.

13.   Claim Seven is dismissed with prejudice.


DATED: 6/24/2013                        /s/ SANDRA M. SNYDER
                                        UNITED STATES MAGISTRATE JUDGE